UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL MARR,

        Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                         Case No. 1:07 CV 745

PATRICIA CARUSO, et al.,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #23). Pursuant to 28 U.S.C. § 636(b)(1)(B) granting authority for United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of motions for summary judgment, the undersigned recommends that Defendants' motion be **granted** and Plaintiff's action **dismissed**.

**BACKGROUND**

On July 19, 2005, Walter Jones, a prisoner then confined within the Michigan Department of Corrections (MDOC), initiated a lawsuit in which he alleged a violation of his First Amendment right to access materials related to the Uniform Commercial Code. *See Jones v. Michigan Dep't of Corrections*, case no. 2:05-cv-72817 (E.D. Mich.). On September 28, 2006, the Honorable Denise Page Hood entered an Order enjoining the enforcement of subparagraph (HH)(23) of MDOC

Policy Directive 05.03.118 (effective January 1, 2006). *See Jones v. Michigan Dep't of Corrections*, case no. 2:05-cv-72817, dkt. #46 (E.D. Mich.). This particular provision provides as follows:

> HH. Prisoners are prohibited from receiving mail that is a threat to the security, good order, or discipline of the facility, may facilitate or encourage criminal activity, or may interfere with the rehabilitation of the prisoner. The following pose such risks within a correctional facility under all circumstances and therefore shall be rejected:
>
> 23. Mail regarding actions that can be taken under the Uniform Commercial Code (UCC) which could be used to harass or threaten another individual, including the filing of a lien against the individual. This does not include legal materials which set forth the statute or provide a scholarly legal analysis of the UCC.

The court enjoined enforcement of this particular subparagraph on the grounds that it was impermissibly vague.[1] *See Jones v. Michigan Dep't of Corrections*, case no. 2:05-cv-72817, dkt. #46 (E.D. Mich.). The court subsequently made clear, however, that its injunction applies only to subparagraph (HH)(23) quoted above and that prison officials retain the authority to prohibit mail for any other legitimate purpose. *Jones v. Michigan Dep't of Corrections*, 2007 WL 2875179 at * 3-4 (E.D. Mich., Sept. 28, 2007).

Plaintiff initiated the present action on August 2, 2007, asserting numerous claims against the following individuals: Patricia Caruso, Richard Stapleton, Norma Killough, Joan Fields, and Sharon Walker. (Dkt. #1). The following allegations are contained in Plaintiff's complaint.

On or about March 7, 2007, Defendant Fields issued to Plaintiff a Notice of Package/Mail Rejection, indicating that a "three page document entitled Uniform Commercial Code Property

---

[1] The MDOC has appealed the entry of this injunction. The matter is presently before the Circuit Court of Appeals for the Sixth Circuit.

Protection Procedure" had been rejected. (Dkt. #1 at ¶¶ 18-19). On April 2, 2007, Defendant Walker conducted a hearing concerning the mail in question, during which she "adjudicated the matter in favor of Plaintiff." (Dkt. #1 at ¶ 21). Following another hearing, conducted on April 6, 2007, Defendant Walker concluded instead that the mail in question violated MDOC Policy Directive 05.03.118 ¶¶ (D)(7) and (HH)(3).[2] (Dkt. #21 at ¶¶ 22-25).

Plaintiff asserts that the rejection of the mail in question violates his First Amendment right to receive mail, his right under the Religious Land Use and Institutionalized Persons Act (RLUIPA) to freely practice his religion, and his right to procedural due process. (Dkt. #1 at ¶¶ 28-30, 40-45). Plaintiff asserts that Defendants conspired to violate the preliminary injunction described above and violated their oath of office. (Dkt. #1 at ¶¶ 31-33, 37-39). Plaintiff asserts that "the UCC prohibition violates the Full Faith and Credit Clause." (Dkt. #1 at ¶¶ 34-36). Plaintiff asserts that the second administrative hearing, pursuant to which the mail in question was found to violate prison policy, was barred by collateral estoppel. (Dkt. #1 at ¶¶ 46-48). Finally, Plaintiff asserts that the decision to reject the mail in question is "contrary to a State Attorney General's Opinion." (Dkt. #1 at ¶¶ 49-51). Defendants now move for summary judgment. For the reasons detailed below, the Court recommends that Defendants' motion be granted and Plaintiff's action dismissed.

---

[2] Subparagraph (HH)(3) prohibits "mail advocating or promoting the violation of state or federal laws." MDOC Policy Directive 05.03.118 ¶ (HH)(3). Subparagraph (D)(7) prohibits "mail for the purpose of operating a business enterprise from within the facility." MDOC Policy Directive 05.03.118 ¶ (D)(7).

## STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative

evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## ANALYSIS

**I.      First Amendment Claims**

Plaintiff claims that Defendants violated his First Amendment right to receive mail by refusing to permit him to possess the UCC-related material in question. Defendants assert that the policy pursuant to which Plaintiff was denied the materials in question was a legitimate means by which to prevent fraudulent and illegal behavior by inmates.

Courts have long recognized that prisoners possess a First Amendment right to receive mail from outside sources. *See, e.g., Brooks v. Seiter*, 779 F.2d 1177, 1180 (6th Cir. 1985). Moreover, it is well accepted that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *see also, Turner v.*

*Safley*, 482 U.S. 78, 84 (1987) ("[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution").  Operating a prison, however, is a difficult task requiring "expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government."  *Turner*, 482 U.S. at 85.

Recognizing this, courts have consistently held that issues involving "the adoption and execution of policies and practices that in [the] judgment [of prison officials] are needed to preserve internal order and discipline and to maintain institutional security" in most circumstances "should be accorded wide-ranging deference."  *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (quoting *Wolfish*, 441 U.S. at 547); *see also*, *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (issues involving prison administration are properly resolved by prison officials, and the solutions at which they arrive should be accorded deference).

Accordingly, when reviewing an inmate's claim of constitutional violation, courts must balance this policy of judicial restraint with the need to protect inmates' constitutional rights.  *See Turner*, 482 U.S. at 85.  The standard by which this balancing occurs was articulated by the *Turner* Court, which held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Id.* at 89.  This standard represents a "reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights."  *Flagner*, 241 F.3d at 481 (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

The *Turner* Court identified four factors that are relevant in determining the reasonableness of a challenged prison regulation:

> 1. there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

      2.      whether there are alternative means of exercising the right that remain open to prison inmates;

      3.      the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

      4.      whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation unconstitutional, without regard to the remaining three factors. If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily weighed evenly," but instead represent "guidelines" by which the court can assess whether the actions at issue are reasonably related to a legitimate penological interest. It should further be noted that the *Turner* standard is not a "least restrictive alternative" test requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policies at issue are reasonably related to a legitimate penological interest. *Id.*

The abusive practice of prisoners filing baseless liens and/or UCC financing statements for the purpose of harassment and credit impairment of the alleged debtor (almost always a state or federal official involved with securing the prisoner's incarceration) is well documented. *See*, *e.g.*, *United States v. Gordon*, 2005 WL 2237640 (S.D. Ga., Aug. 25, 2005) (prisoners filed "facially absurd" liens and UCC financing statements designed to harass and intimidate government officials in the performance of their duties); *United States v. Orrego*, 2004 WL 1447954 (E.D.N.Y., June 22, 2004) (prisoner purported to copyright his name, after which he filed fraudulent liens against various government officials for using his name without permission or payment); *Ray v. Williams*, 2005 WL

697041 (D. Or., Mar. 24, 2005) (prisoner engaged in fraudulent scheme by which he filed false UCC filings against government officials seeking payment for unauthorized use of his copyrighted name); *United States v. Martin*, 356 F.Supp.2d 621 (W.D. Va. 2005) (prisoner filed fraudulent UCC financing statements naming himself as the secured party for a $108,000,000.00 debt owed him by various government officials); *United States v. Brum*, 2005 WL 1606584 (E.D. Tex., July 1, 2005) (prisoner filed fraudulent liens and UCC financing statements against the judge and prosecutor involved in his criminal conviction); *Cooperwood v. McDonald*, 2005 WL 1427718 (W.D. Mich., June 13, 2005) (prisoner filed a fraudulent lien "for infringement of his copyrighted name"); *United States v. Stouder*, 2005 WL 2715666 (M.D. Tenn., Sept. 2, 2005) (prisoner filed fraudulent UCC financing statements against government officials in the amount of $300,000,000.00). Defendants have also submitted under seal numerous examples of fraudulent liens (based upon the Uniform Commercial Code) filed against Michigan prison and judicial officials. (Dkt. #30, Exhibit #E-1).

Defendants have also submitted under seal the rejected mail at issue in this matter. (Dkt. #30, Exhibit A-2). According to this material, "there is no private or real property ownership for an individual [because] [t]he 'state' owns it all." This material then instructs that the solution to this dilemma is to file a UCC Financing Statement against the "Debtor (Strawman)." The Court notes that many of the examples of fraudulent liens submitted by Defendants were effected by the completion and filing of a UCC Financing Statement.

That prisoners use the UCC and UCC-related materials to perpetrate fraud and harassment against government and prison officials is well established. That the Michigan Department of Corrections has a legitimate penological purpose in preventing such behavior cannot seriously be questioned. The policies pursuant to which the mail in question was rejected represent a rational means

by which to achieve the legitimate goal of preventing prisoners from engaging in such fraudulent and illegal behavior. The Court concludes, therefore, that there exists a "valid, rational connection" between the policies at issue and a legitimate governmental interest.

As for the remaining *Turner* factors, such do not weigh in Plaintiff's favor. While Plaintiff suggests that there exist alternative means of preventing fraudulent activity by inmates, the Constitution does not require that prison officials accommodate inmates' rights in the manner most convenient to inmates. *See, e.g., Jones*, 697 F.2d at 803. Rather, the Constitution instructs that prison officials may not infringe upon inmates' constitutional rights unless necessitated by a legitimate penological purpose. To the extent that the decision to reject the mail in question constituted an infringement of Plaintiff's constitutional rights, Defendants have established that such was necessitated by a legitimate penological purpose. Moreover, the resources of the MDOC are limited and the Court must accord "wide-ranging deference" to the solutions implemented by prison officials to combat the very serious problem of UCC-related fraud perpetrated by prisoners. The Court recommends, therefore, that Defendants are entitled to summary judgment as to Plaintiff's First Amendment claims.

## II.    RLUIPA Claims

Plaintiff asserts that by rejecting the mail in question, Defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* In relevant part, RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). Plaintiff has failed to establish that the denial of the UCC-related material at issue has substantially burdened his ability to exercise his religion.

Accordingly, the Court recommends that Defendants are entitled to summary judgment as to these claims.

### III.        Procedural Due Process Claims

Plaintiff asserts that the procedure by which Defendants determined that the mail at issue ran afoul of MDOC policy violated his right to procedural due process.

Pursuant to the Due Process Clause of the Fourteenth Amendment, before depriving an individual of life or a constitutionally protected liberty or property interest the state must afford the individual with notice and an opportunity to be heard. *See Brentwood Academy v. Tennessee Secondary School Athletic Association*, 442 F.3d 410, 433 (6th Cir. 2006), *rev'd on other grounds*, 127 S.Ct. 2489 (2007); *Harris v. City of Akron*, 20 F.3d 1396, 1401 (6th Cir. 1994). The fundamental requirement of due process is the right to be heard "at a meaningful time and in a meaningful manner." *Mertik v. Blalock*, 983 F.2d 1353, 1364 (6th Cir. 1993) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). With respect to incoming mail, the Supreme Court has held that the decision to censor incoming mail must be accompanied by "minimal procedural safeguards," such as notice and an opportunity to be heard. *See Procunier v. Martinez*, 416 U.S. 396, 417-19 (1974), *overruled on other grounds by, Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989).

Plaintiff acknowledges that he was given notice of the decision to reject the mail in question and was given an opportunity to be heard on the matter. Defendant Walker has submitted evidence establishing that she conducted two hearings on the matter, at which Plaintiff was given the opportunity to present evidence and argument. (Dkt. #24, Exhibit B, Walker Affidavit). Plaintiff has

submitted no evidence in response to the present motion. The Court recommends, therefore, that Defendants are entitled to summary judgment as to Plaintiff's procedural due process claims.

**IV.        Conspiracy Claims**

Plaintiff asserts that Defendants conspired to violate the September 28, 2006 preliminary injunction (described above) entered by the Honorable Denise Page Hood in *Jones v. Michigan Dep't of Corrections*. As previously noted, Judge Hood has made clear that this injunction applies only to one particular provision of the policy directive in question and that prison officials retain the authority to prohibit mail for any other legitimate purpose.

In rejecting Plaintiff's mail, Defendants did not rely on the provision found wanting by Judge Hood, but instead relied on two separate provisions, the application of which are not precluded by Judge Hood's Order. Because Defendants have not violated the preliminary injunction in question, they cannot have unlawfully conspired to violate such. Accordingly, the Court recommends that Defendants are entitled to summary judgment as to these claims.

**V.        Withdrawn Claims**

In his complaint, Plaintiff asserts that Defendants' actions violate the Full Faith and Credit Clause of the United States Constitution. Plaintiff also asserts that Defendants failed to follow their oaths of office. In his response to Defendants' motion, Plaintiff asserts that he "hereby withdraws" these claims because he cannot identify authority supporting such. These claims are both without merit.

The "very purpose of the full faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by

the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." *Finstuen v. Crutcher*, 496 F.3d 1139, 1152 (10th Cir. 2007) (citing *Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 276-77 (1935)). In other words, the Full Faith and Credit Clause is designed "to preserve rights acquired or confirmed under the public acts and judicial proceedings of one state by requiring recognition of their validity in other states." *Finstuen*, 496 F.3d at 1152 (quoting *Pac. Employers Ins. Co. v. Indus. Accident Comm'n*, 306 U.S. 493, 501 (1939)). The Full Faith and Credit Clause is simply not implicated by the facts of this case. The Court recommends, therefore, that Defendants are entitled to summary judgment as to such claims.

As for Plaintiff's claim that Defendants violated their oath of office by failing to act in compliance with the law, such is likewise without merit. As detailed herein, Plaintiff has failed to establish that Defendants acted unlawfully or improperly in rejecting the mail in question. Accordingly, the Court recommends that Defendants are entitled to summary judgment as to these claims.

**VI.     State Law Claims**

As previously noted, Defendant Walker conducted two hearings regarding the rejection of the mail in question. At the conclusion of the first hearing, Walker found that the material in question did not violate prison policy. (Dkt. #24, Exhibit B). Defendant Walker, however, reconsidered the matter and, following a second hearing, concluded that the material violated prison policy as described above. (Dkt. #24, Exhibit B). Plaintiff asserts that this second administrative hearing was "collaterally estopped." Plaintiff also asserts that Defendants, in rejecting the mail in question, violated "former

Attorney General Frank Kelley's specific authorization to Plaintiff allowing the operation of a business while incarcerated."

As discussed above, Defendant Walker's actions did not violate Plaintiff's federal due process rights. However, whether Defendant Walker was authorized to conduct a second hearing and modify her initial findings is a matter of state law. Likewise, Plaintiff's claim that Defendants failed to comply with an opinion issued by the former Attorney General for the State of Michigan fails to implicate federal law. Plaintiff has asserted the present action pursuant to 42 U.S.C. § 1983, which provides a cause of action for the deprivation of any right, privilege, or immunity secured by federal law or the United States Constitution. Section 1983 does not authorize a cause of action based on an alleged violation of state law.

Pursuant to 28 U.S.C. § 1367(c)(3), the district court may decline to exercise supplemental jurisdiction over a state law claim if it "has dismissed all claims over which it has original jurisdiction." Indeed, "if the federal claims are dismissed before trial. . .the state claims should be dismissed as well." *Taylor v. First of America Bank - Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also*, *Wojnicz v. Davis*, 2003 WL 21774162 at *3 (6th Cir., July 29, 2003) (same). Accordingly, the undersigned recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claims and instead dismiss such claims, thereby permitting Plaintiff to pursue such claims in state court if he so desires.

## CONCLUSION

For the reasons articulated herein, the Court recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #23), be **granted** and Plaintiff's action **dismissed**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

        Respectfully submitted,

Date:  August 22, 2008         /s/ Ellen S. Carmody
        ELLEN S. CARMODY
        United States Magistrate Judge